Resham Jeet SINGH, Gursharan Jeet Kaur, Individually and as Guardians of Gurpreet Kaur, Plaintiffs,

v.

**TAROM ROMANIAN AIR TRANSPORT, Defendant.**

**No. CIV.A. CV–99–0933DGT.**

United States District Court, E.D. New York.

April 5, 2000.

Pankaj Malik, Flushing, NY, for Plaintiffs.

Michael J. Holland, Condon & Forsyth LLP New York, NY, for Defendant.

## MEMORANDUM AND ORDER

TRAGER, District Judge.

Defendant foreign airline moves to dismiss plaintiff passengers' personal injury claims for lack of subject matter jurisdiction under the Warsaw Convention.

### Background

Plaintiffs (the "Singhs") are citizens of India admitted to the United States for permanent residence, who reside in Queens, New York. In or about May 1998, Resham Jeet Singh's father purchased three tickets for plaintiffs from Globe Travel, a travel agency in Jackson Heights, New York. The tickets were for round trip travel on defendant Tarom Romanian Air Transport ("Tarom") from Delhi, India to New York and back. Plaintiffs explain that round trip tickets were purchased in order to save money on a short trip back to India that plaintiffs intended to take later in the year. Although the tickets were paid for in New York, the tickets were issued by Bajaj Travels in Delhi, India, and were picked up by plaintiffs in Delhi.

Plaintiffs' flight from Delhi to New York included a stop-over in Bucharest, Romania. Although plaintiffs had the proper documentation for entry into the United States, when the flight arrived in Bucharest, agents of Tarom refused to permit the Singhs to continue travel to New York. Plaintiffs allege that Tarom employees then confined plaintiffs in the customs area of the airport for six days and deprived them of sufficient food and bathing facilities before allowing them to continue their travel to New York.

Plaintiffs subsequently brought this action, complaining that Tarom's conduct during the six-day detention constituted a violation of Articles 17 and 19 of the War-

saw Convention.[1] In addition, plaintiffs claim that the detention constituted "malicious prosecution" under New York law.[2]

Defendant moves to dismiss: (1) plaintiffs' state law claim on the ground that it is preempted by the Convention, and (2) plaintiffs' Warsaw Convention claim for lack of subject matter jurisdiction.

## Discussion

### (1)

■ As a treaty of the United States, the Warsaw Convention is supreme law of the land. *See* U.S. Const. art. VI, cl. 2; *Air France v. Saks,* 470 U.S. 392, 406, 105 S.Ct. 1338, 1346, 84 L.Ed.2d 289 (1985) (citing *Reed v. Wiser,* 555 F.2d 1079, 1093 (2d Cir.1977)). It is well-established that where the provisions of the Warsaw Convention apply to a claim, the Convention exclusively governs the rights and liabilities of the parties, and, thus, preempts state law. *See In re Air Disaster at Lockerbie, Scotland on December 21, 1988,* 928 F.2d 1267, 1274 (2d Cir.1991); *Boehringer–Mannheim Diagnostics, Inc. v. Pan American World Airways, Inc.,* 737 F.2d 456, 458–59 (5th Cir.1984); *In re Mexico City Aircrash of October 31, 1979,* 708 F.2d

400, 418 (9th Cir.1983). In this case, plaintiffs concede—perhaps unwisely[3]—that the Convention governs their claims. (Pls.' Mem. Opp. at 6.) Accordingly, plaintiffs' state law malicious prosecution claim is preempted by the Convention and must be dismissed.

### (2)

Defendant moves to dismiss plaintiffs' remaining Warsaw Convention action on the ground that this court has no subject matter jurisdiction over the action under the provisions of the Warsaw Convention. Article 28(1) of the Convention specifies that actions arising out of international transportation governed by the Convention must be brought in one of four clearly identified fora: (1) the domicile of the carrier, (2) its principal place of business of the carrier, (3) the forum in which the carrier has a place of business through which the contract was made, or (4) the place of destination. It is well-established that unless one of the specified fora is in the United States, a federal district court lacks jurisdiction over the claim under the terms of the Convention and, hence, lacks

1. Convention for the Unification of Certain Rules Relating to International Transportation, Oct. 12, 1929, 49 Stat. 3000, 137 L.N.T.S. 11, as amended by the Protocol to Amend the Unification of Certain Rules Relating to International Carriage by Air Signed at Warsaw on 12 October 1929, Sept. 28, 1955, 478 U.N.T.S. 371 (the "Warsaw Convention" or "Convention"). Article 17 of the Convention specifies that the Convention extends to "where an accident has occurred, in which (2) a passenger suffered death, wounding, or any other bodily injury, and (3) the accident occurred either on board the aircraft or in the course of embarking or disembarking." Article 19 provides that the "carrier shall be liable for damage occasioned by delay in the transportation by air of passengers, baggage, or goods."

2. Plaintiffs would appear to be attempting to state a cause of action for false imprisonment, rather than malicious prosecution. Nonetheless, for the purpose of referring to the claim, the court will use the plaintiffs' designation "malicious prosecution."

3. There would appear to be a latent issue as to whether the Convention applies under the circumstances alleged in the complaint given that plaintiffs were confined in the customs area of the Bucharest airport rather than at the departure gate. *See generally Buonocore v. Trans World Airlines, Inc.,* 900 F.2d 8, 10 (2d Cir.1990) (reciting three-prong test to determine whether the injured passenger was "embarking" or "disembarking" so as to bring her claim within the coverage of Article 17); *Lockerbie,* 928 F.2d at 1273 (stating that a plaintiff "plainly may institute" a state law cause of action when his or her claim does not arise under the Warsaw Convention). Were this a pro se action, the court might explore the issue on its own initiative, *see Crossman v. Crosson,* 1996 WL 280096, at * 2, 101 F.3d 684 (2d Cir.1996) (Table) (holding that it is improper to dismiss pro se complaint where plaintiff has alleged facts upon which a recognized legal claim could be based even if plaintiff fails to identify the correct legal theory), but plaintiffs here are represented by counsel. Accordingly, the court will accept the plaintiffs' concession that the Warsaw Convention applies to their claim.

federal subject matter jurisdiction over the controversy. *See Klos v. Polskie Linie Lotnicze*, 133 F.3d 164, 167 (2d Cir.1997); *In re Alleged Food Poisoning Incident, March, 1984*, 770 F.2d 3, 5 (2d Cir.1985); *Petrire v. Spantax, S.A.*, 756 F.2d 263 (2d Cir.1985); *Smith v. Canadian Pacific Airways, Ltd.*, 452 F.2d 798, 802 (2d Cir.1971). Because plaintiffs have conceded that the Convention does apply, (Pls.' Mem. Opp. at 6), the dispositive question for the present motion is whether the Eastern District of New York is a proper forum for plaintiffs' action under the terms of the Convention. Each of the possible bases for subject matter jurisdiction under Article 28(1) will be considered in turn.

First, the "domicile" of a carrier within the meaning of Article 28(1) is the carrier's place of incorporation. *See Smith*, 452 F.2d at 802; *Pflug v. Egyptair Corp.*, 788 F.Supp. 698, 700 (E.D.N.Y.1991), *aff'd*, 961 F.2d 26 (2d Cir.1992). There is no dispute that Tarom is organized under the laws of the Republic of Romania. Romania is, therefore, Tarom's domicile for the purposes of the Convention. Accordingly, the domicile of the carrier clause does not provide a basis for this court to exercise jurisdiction over the Singhs' claims.

Second, for the purposes of Article 28(1), a foreign corporation has only one "principal place of business." *See Smith*, 452 F.2d at 802 n. 13; *Eck v. United Arab Airlines, Inc.*, 360 F.2d 804, 809 n. 9 (2d Cir.1966); *Stanford v. Kuwait Airways Corp.*, 648 F.Supp. 657, 661 (S.D.N.Y. 1986). Tarom's corporate headquarters are located at the Otopeni Airport in Bucharest, Romania. Moreover, Tarom operates the majority of its flights out of Bucharest. Tarom's principal place of business is, therefore, Bucharest, Romania. Accordingly, the carrier's principal place of business clause does not provide a basis for this court to exercise jurisdiction under the Convention.

■ Third, the "destination" of a round trip international airline ticket within the meaning of Article 28(1) is the starting point of the journey. *See Petrire*, 756 F.2d at 265. In determining the "destination" of a journey covered by the Convention, the Second Circuit has made clear that the unexpressed intentions of the passenger are not relevant if the instrument evidencing the contract is unambiguous. *See Klos*, 133 F.3d at 167–68 (fact that passengers on round trip from Poland to New York and back intended to remain in New York did not make New York the passengers' destination for purposes of the Warsaw Convention); *see also Swaminathan v. Swiss Air Transport Co.*, 962 F.2d 387, 389 (5th Cir.1992) ("When a person purchases a roundtrip ticket, there can be but one destination, where the ticket originated."). Here, plaintiffs' tickets clearly indicate that Delhi was the starting point of plaintiffs' travel. Thus, notwithstanding plaintiffs' claim that they intended to remain in New York for an extended period of time—a fact they did not communicate to Tarom or its agents, Article 28(1)'s destination clause does not give a basis for this court to exercise jurisdiction under the Convention.

The only remaining possible basis for this court's jurisdiction, then, is the clause of Article 28(1) relating to the carrier's place of business through which the contract was made. Defendant argues that the place of business through which it made the contract was the travel agency that issued and delivered the tickets, viz., Bajaj Travels in Delhi. *See Lam v. Aeroflot Russian Int'l Airlines*, 999 F.Supp. 728, 732 (S.D.N.Y.1998) (holding that the "'place of business through which the contract has been made' is the place where the passenger ticket was issued" (citing *Smith*, 452 F.2d at 803; *Stanford*, 648 F.Supp. at 661)). In this regard, it should be noted that the tickets themselves indicate that they were issued in Delhi. Plaintiffs, however, argue that the place of business through which the contract was made is Globe Travel, the New York travel agent to whom the purchase price of the tickets was paid.

■ In cases where tickets were paid for at an agency in one location but issued by a different agency in another location, the agency that actually issues the tickets will be deemed the place through which the contract was made unless the purchaser establishes that a principal-agent relationship existed between the agency where the tickets were paid for and the issuing agency or the carrier. *See Eck,* 360 F.2d at 814–15 (finding that the United States was the place through which contract was made where foreign airline had interline agreement with second foreign airline that sold tickets in the United States for travel on the first foreign airline); *In re Air Disaster Near Cove Neck, New York,* 774 F.Supp. 732, 733–34 (E.D.N.Y.1991) (finding that the United States was the place through which contract was made where a Columbian airline's New York office took payment for tickets and issued pre-paid ticket advice to its Bogota office, despite the fact that the tickets were issued by the Bogota office).

The precise nature of the relationship between the New York travel agency, Globe Travel, and the Indian travel agency, Bajaj Travels, or Tarom itself is, therefore, dispositive of plaintiffs' place-of-business argument for subject matter jurisdiction. As an exhibit to their memorandum in opposition, plaintiffs submitted an affidavit by Anil Dubey ("Dubey"). Dubey identifies himself as the manager of Amba Travel, LLC, in Jackson Heights, New York, which was doing business as Globe Travel at the time relevant to this action. (Pls.' Mem. Opp., Ex. C, Dubey Aff. ¶¶ 1–2.) Dubey's affidavit reads, in relevant part:

3. [M]y company was and is authorized to sell and issue airline tickets in New York.

4. In May of 1998, [plaintiff Resham Singh's father] purchased three (3) round trip tickets . . . on Tarom Airlines from Delhi to New York and back.

5. Mr. Singh paid approximately Three Thousand ($3,000.00) Dollars for these tickets.

6. Upon receiving payment, the tickets were issued by Bajaj Travels in Delhi, India and were picked up by the passengers at the office of Bajaj Travels in Delhi, in India.

(*Id.* ¶¶ 3–6.) These allegations are insufficient to establish a principal-agent relationship between Globe Travel and Bajaj Travel or Tarom analogous to that found in *Eck* or *Cove Neck,* but instead only support a finding that Globe Travel acted as a broker between the Singhs and Bajaj Travel.

Nonetheless, in their sur-reply brief, plaintiffs assert that Globe Travel was an agent of Tarom and that no funds were ever remitted from Globe Travel to Bajaj Travel. (Letter from Plaintiffs' Counsel to Chambers of 11/12/99, at 2 (citing Dubey Aff.)). These assertions are simply not supported by Dubey's affidavit. (*See* Dubey Aff. *passim.*)

In light of the discrepancy between Dubey's affidavit and plaintiffs' counsel's representations regarding Globe Travel, the court adjourned oral argument on the motion in order to give the parties an opportunity to depose Dubey and determine the precise nature of Globe Travel's relationship with Tarom and Bajaj Travel. By letter dated March 8, 2000, plaintiffs' counsel advised the court that Dubey failed to appear for his deposition and that he had apparently left the country. (Letter from Plaintiffs' Counsel to Chambers of 3/8/00, at 1.) Plaintiffs' counsel further advised that her clients wished to waive oral argument and have the motion decided on the present papers without the benefit of Dubey's deposition. (*Id.*) Accordingly, in deciding the present motion plaintiffs' representations as to Globe Travel's agency status must be rejected because they are not fairly implied by the text of Dubey's affidavit.

■ In absence of any evidence of a principal-agent relationship between Globe Travel and Bajaj Travel or Tarom, it can only be found that the place of business through which the contract was made was

the agency that actually issued the tickets, Bajaj Travel. Since Bajaj Travel is located in Delhi, India, the place-of-business clause of Article 28(1) does not provide a basis for this court to exercise jurisdiction over plaintiffs' Warsaw Convention claim.

Because the Eastern District of New York is not an appropriate forum for this action under any of the bases specified in Article 28(1), defendant's motion to dismiss plaintiffs' Warsaw Convention claim for lack of subject matter jurisdiction must be granted.

### Conclusion

For the reasons set forth above, plaintiffs' state law malicious prosecution claim is preempted by the Warsaw Convention, and this court has no subject matter jurisdiction over plaintiffs' remaining claim under the Convention. Accordingly, defendant's motion to dismiss is granted.

SO ORDERED.